UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KINGVISION PAY-PER-VIEW, LTD.
As Broadcast Licensee of the October 2, 2004
Trinidad/Mayorga Program,

                        Plaintiff,

       -against-

AGUSTINA TORRES, Individually and d/b/a
MARAZUL RESTAURANT a/k/a MARAZUL
MEXICAN REST., and MARAZUL
RESTAURANT a/k/a MARAZUL MEXICAN
REST.,

                       Defendants.
-------------------------------------------------------------------X

REPORT & RECOMMENDATION

05-CV-1927 (SJF) (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

       Plaintiff, Kingvision Pay-Per-View, Ltd. ("plaintiff" or "Kingvision"), brings this action against defendants Agustina Torres, individually and as the principal of Marazul Restaurant (collectively, "defendants" or "Marazul"), alleging that defendants violated the Federal Communications Act of 1934, codified as amended at 47 U.S.C. §§ 553 and 605. Compl. ¶¶ 18, 25, 32. More specifically, plaintiff alleges that defendants engaged in the unlawful interception and exhibition of the Trinidad/Mayorga pay-per-view boxing event (the "Event") on October 2, 2004. *Id*. ¶¶ 12, 16.

       Plaintiff filed the complaint on April 14, 2005. Docket Entry 1. Defendants were served on May 19, 2005. Docket Entry 2. Defendants failed to appear or otherwise move with respect to the complaint. Plaintiffs then moved for a default judgment on November 30, 2005 seeking statutory and enhanced damages, investigative and attorney's fees and costs, and a permanent injunction. Docket Entry 4. Upon plaintiff's application and in light of defendants' failure to

appear in or otherwise defend this action, on June 6, 2006 the Clerk of the Court noted defendants' default pursuant to Fed. R. Civ. P. 55(a). Docket Entry 7. On May 30, 2006 the Honorable Sandra J. Fuerstein granted plaintiff's application for a default judgment and referred this case to me for a report and recommendation. Docket Entry 6. Plaintiff has submitted, *inter alia*, a memorandum of law ("Pl. Memo") and the affidavits of its Vice President, Donna K. Westrich, dated September 21, 2005 ("Pl. Aff.") and its counsel, Julie Cohen Lonstein, dated November 21, 2005 ("Lonstein Aff."), in support of its application for damages. Docket Entry 4.

## Facts

Plaintiff was granted the rights to distribute the Event, including all undercard bouts, and the entire television broadcast via closed circuit television and encrypted satellite signal. Compl. ¶ 12. Plaintiff entered into agreements with various entities in the State of New York allowing them to publicly exhibit the Event to their patrons. *Id*. ¶ 13 Defendants did not contract with Kingvision for the rights to exhibit the Event. Pl. Aff. ¶ 6.

The satellite signal that transmitted the Event was encrypted to protect its access from those who did not contract with plaintiff to lawfully broadcast the Event. Defendants would not have the ability to receive the signal without, *inter alia*: 1) the use of a "black box" which is purchased for a fee and when installed on a cable TV line will descramble reception of pay-per-view broadcasts; 2) misrepresenting their commercial nature to the cable company in order to purchase the broadcast at the residential price of $25.00 and $50.00; or 3) the use of an illegal cable drop or splice from an adjacent apartment or home that had already purchased the broadcast at the residential price. Pl. Aff. ¶ 10.

Plaintiff hired independent auditors to identify establishments that were unlawfully exhibiting the Event. Pl. Aff. ¶ 4. Prior to visiting the establishments, the auditors were given a list of the locations that were authorized to exhibit the Event. *Id*. ¶ 5. On October 2, 2004, defendants intercepted and received the signal for the Event without authorization. Defendants then broadcast the Event to the patrons within Marazul Restaurant located at 5804 5th Avenue, Brooklyn NY 11220-3820. Compl. ¶¶ 7, 12, 16.

The auditor who visited Marazul on the night of the Event submitted an affidavit dated October 2, 2004 ("Piracy Aff."), in which he states that he entered the restaurant at approximately 10:22 p.m. and observed the exhibition of a portion of an undercard bout of the Event. Piracy Aff. at 1. According to the auditor, there were two 19-inch television sets in the back center and left of the restaurant, and there were approximately 35 patrons in the restaurant. *Id* at 1-2. Marazul has an estimated capacity of 75. *Id*. The auditor paid a five dollar cover charge to enter Marazul. *Id*.

Discussion

A.    <u>Jurisdiction</u>

This Court has jurisdiction to decide this case. *See* 28 U.S.C. § 1331; 47 U.S.C. § 605 (e)(3). Similarly, the Court has personal jurisdiction over defendants, who are residents of this District. *See* Compl. ¶ 3-4.

B    <u>Liability</u>

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Pub. Corp. v. Ryan*,

807 F. Supp. 975, 977 (S.D.N.Y. 1992).

The allegations of plaintiff's complaint establish defendants' liability under § 605.[1] Section 605(a) provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the ... contents... of such intercepted communication to any person." 47 U.S.C. § 605(a). Section 605(a) has been held to apply to the interception of cable communications originating as a satellite or radio transmission. *See Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir.), *cert. denied*, 519 U.S. 929 (1996). Kingvision alleges that defendants used an illegal device to intercept and receive Kingvision's satellite signal and then broadcast the Event without authorization. Compl. ¶¶ 15-16. Defendants' alleged conduct thus violated 47 U.S.C. § 605(a).

C.  Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158. Rather, claims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id*. An evidentiary presentation is required so that the court may ensure that there is a basis for the damages sought before entering judgment in the amount demanded. *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits

---

[1] It is well-settled that a claimant who establishes liability under both 47 U.S.C. § 553 and § 605 may only recover damages under one section. *See Am. Cablevision of Queens v. McGinn*, 817 F. Supp. 317, 320 (E.D.N.Y. 1993). Plaintiff, therefore, elects to recover damages under § 605. Pl. Memo at 4.

and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. Plaintiff in this case seeks an award of statutory and enhanced damages, investigative and attorney's fees and costs, and a permanent injunction. Pl. Memo at 5-10. Defendants have not submitted any opposition to the papers submitted by plaintiff. Accordingly, a hearing is not warranted.

A claimant who has established liability under Section 605(a) may recover an award of statutory damages of not less than $1,000 or more than $10,000, as the court considers just, for each violation of § 605(a). *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). The court may consider such factors as "the pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant,...the financial needs and earning ability of the defendant...as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose." *Cablevision Sys. Corp. v. De Palma*, No. 87-CV-3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (quoting *Cablevision Sys. Dev. Co. v. Cohen*, No. 84-CV-1155, slip. op. at 4-5 (E.D.N.Y. May 20, 1988).

Some courts have awarded flat amounts when calculating damages. *See Home Box Office v. Champs of New Haven*, 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000 in statutory damages); *Kingvision Pay-Per-View Ltd. v. Brito*, No. 05 Civ. 1042, 2006 WL 728408, at *2 (S.D.N.Y. Mar. 20, 2006) (awarding $5,000 in statutory damages); *Kingvision Pay-Per-View, Ltd. v. Ruiz*, No. 04 Civ. 6566, 2005 WL589403, at *2-3 (S.D.N.Y. Mar. 9, 2005) (awarding $5,000 in statutory damages). Other courts have assessed damages by multiplying the number of patrons who viewed the event by the amount an individual would pay to view the program at home on a pay-per-view channel. *See Time Warner Cable of New York City v. Taco Rapido*

*Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding statutory damages of $50 per patron); *Cablevision Systems Corp. v. 45 Midland Enterprises*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same).

Plaintiff seeks the maximum statutory damage award of $10,000. Pl. Memo at 8 ("Plaintiff urges that the maximum amount of statutory damages under 605(e)(3)(C)(i)(II), $10,000 be awarded in this case."); *see also* 47 U.S.C. § 605(e)(3)(C)(i)(II). The Court finds that such an award is disproportionate to the violation of the statute at issue here, especially in light of the fact that it would have cost defendant only $1,325 to exhibit the Event legally. *See Kingvision v. Torres et al.*, No. 05-cv-5799, Docket Entry 10 (Affidavit of Julie Cohen Lonstein, dated June 22, 2006). An award more than seven times the amount of the license fee is unjust, and would amount to a windfall for plaintiff, something which the relevant statute does not contemplate. In the exercise of its discretion, this Court believes that an award of $5,000 in statutory damages is appropriate. This amount takes into account the pecuniary loss of plaintiff – $1,325 – and the financial resources, needs, and earning ability of the defendant, as well as the burden that a greater damage award would impose on the defendant. Given the default, while there is little information in the record to assess defendants' financial circumstances, the Court is sure that these defendants do not have the financial ability to afford a higher statutory damage award, especially in light of the award of enhanced damages, as discussed below. This amount is also in line with other statutory damage awards from this Court and others.

Plaintiff also seeks enhanced damages of up to $100,000, contending that defendants wilfully violated the statute for commercial advantage or private gain. *See* 47 U.S.C. 605(e)(3)(C)(ii). Wilfulness is defined as "disregard for the governing statute and an indifference

6

for its requirements." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126-27 (1985). Defendants intercepted and broadcast the program without authorization. Furthermore, defendants could not have done so without using an illegal device or misrepresenting the nature of their commercial establishment to a cable or satellite television provider. *See Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp.2d 485 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distributions systems.").

In the instant case, the Court agrees that defendants committed the wilful violation for commercial advantage. Marazul's exhibition of the Event led to an increase in patrons who paid a five dollar cover charge to view the Event. In turn, those patrons most likely purchased food and/or drinks while viewing the Event. Accordingly, I recommend that plaintiff be awarded $10,000 in enhanced damages. *See Garden City Boxing Club, Inc. v. Polanco*, No. 05 Civ. 3411 (DC), 2006 WL 305458, at * 3 (S.D.N.Y. Feb. 7, 2006) (awarding $10,000 in enhanced damages where plaintiff submitted proof that defendant advertised the event to lure in patrons).

C.   Costs and Fees

Plaintiff also seeks to recover attorney's fees and costs. An award of fees and costs is mandatory pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). As directed by the Second Circuit in *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (1983), plaintiff has submitted a declaration of its attorney and contemporaneous time records. Plaintiff asserts that it incurred $1,500 in attorney's fees and $450.00 in costs. Lonstein Aff. ¶ 3. In her affidavit, counsel sets forth a description of the billing rates of her firm which are as follows: $200.00 per hour for work performed by an attorney and $75.00 per hour for work performed by a paralegal.

*Id.* ¶ 4.

The hours and rates charged by counsel are reasonable, and should be awarded. *See Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp.*, 215 F.R.D. 60, 64 (E.D.N.Y. 2003) (finding rates of $400 for a partner and $180 for a third-year associate reasonable); *New Leadership Comm. v. Davidson*, 23 F. Supp.2d 301, 310 (E.D.N.Y. 1998) (finding rates of $275 for a partner and $200 for an associate reasonable).

Counsel asserts it incurred $450.00 in costs which consists of filing fees ($250) and the cost of service of process ($200). Lonstein Aff. ¶ 3; Ex. A. The amounts spent for filing fees and service of process are reasonable, and should be awarded. Plaintiff's vice president, Donna K. Westrich, has also requested for $350.00 in investigative fees for Signal Auditing's work. Pl. Aff. ¶ 9; Ex. E. The language of Section 605(e)(3)(B)(iii) does not explicitly provide for the recovery of investigative costs or auditing fees. There is legislative history for the statute, however, that does indicate that at least some members of Congress intended that such costs be recoverable. *Kingvision Pay-Per-View Ltd. v. Autar*, – F. Supp. 2d –, 2006 WL 997243, at * 6 (E.D.N.Y. Apr. 13, 2006) (citing 1984 U.S.C.C.A.N. 4742, 4750, 1984 WL 37497 (Leg. Hist.) (1984)). Nevertheless, to be recoverable, such costs must be subjected to the same level of scrutiny to which requests for attorneys' fees are subjected:

> Thus, a plaintiff must document: (1) the amount of time necessary for the investigation; (2) how much the investigators charged per hour; [and] (3) why the investigators are qualified to demand the requested price.

*Id.* (citing *Int'l Cablevision, Inc. v. Noel*, 982 F. Supp. 904, 918 (W.D.N.Y. 1997). Here, plaintiff has not submitted any such proof. Accordingly, I respectfully recommend that plaintiff's request for auditor's fees be denied.

D.  Permanent Injunction

Plaintiff requests a permanent injunction enjoining defendants from further violations of §§ 553 or 605 in the future. A court "may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Main Events/Monitor Prods. v. Batista,* No. 96-CV-5089, 1998 WL 760330, at * 1 (E.D.N.Y. Aug. 26, 1998). The first condition is satisfied because injunctions are available remedies pursuant to §§ 553(c)(2)(A) and 605(e)(3)(B)(I). The second condition, however, has not been satisfied. A party seeking an injunction must demonstrate irreparable harm and the absence of an adequate remedy at law. *See Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 57 (1975). Plaintiff has not submitted any evidence that it will suffer irreparable harm or that the statutory and enhanced damages are insufficient to deter future conduct. I therefore recommend that plaintiff's request for a permanent injunction be denied. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Lalaleo*, – F. Supp. 2d –, 2006 WL 1071885, * 8 (E.D.N.Y. Apr. 24, 2006).

## Conclusion

For the foregoing reasons, I respectfully recommend that default judgment be entered against defendants Agustina Torres and Marazul Restaurant in the amount of $16,950.00, comprised of $15,000.00 in statutory and enhanced damages, and $1,950.00 in attorney's fees and costs, plus post-judgment interest at a rate of 9%. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Sandra J. Feuerstein within ten days of receiving this Report and Recommendation. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1);

FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989). Plaintiff is hereby directed to serve copies of this Report and Recommendation upon defendants by July 14, 2006 at their last known address, and to file proof of service with the Clerk of the Court.

Dated: Brooklyn, New York
July 10, 2006

/s/
Ramon E. Reyes, Jr.
United States Magistrate Judge